UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTONIO L. CALDERON,
    Plaintiff,

v().

THOMAS DICKHAUT,
SUPERINTENDENT, SOUZA
BARANOWSKI CORRECTIONAL
CENTER, ET AL.
    Defendants.

C.A. No. 11-11164-JLT

## MEMORANDUM AND ORDER

TAURO, D.J.

### BACKGROUND

On June 17, 2011, Plaintiff Antonio L. Calderon ("Calderon"), a prisoner in custody at the Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, filed this civil rights action (with exhibits) against three Defendants: (1) Thomas Dickhaut ("Dickhaut"), Superintendent of SBCC; (2) Osvaldo Vidal ("Vidal"), former Director of Security at SBCC and current Deputy Superintendent of Operations; and (3) Anthony Mendonsa ("Mendonsa"), Deputy Superintendent of Classifications. Calderon's claims arise out of a July 9, 2009 assault in the prison gym, during which he alleges he was seriously injured by two fellow inmates (Gary Bons ("Bons") and Dennis Parham ("Parham")), one of whom used a shank. The claims essentially boil down to the following: (1) Defendants instituted a double-bunking policy which created a violent atmosphere in the prison facility, leading to his assault; (2) errors in his classification, resulting in his being placed in a maximum-security facility rather than a medium-security facility (where he contends he should have been placed), led to the assault; and (3) Defendants failed to intervene to protect him from assault and abuse by inmates Bons and Parham.

To support the failure to intervene claims, Calderon alleges three incidents. First, he alleges that he told Officer Burke (who was not named as a Defendant) that he had been threatened by other inmates in his job assignment group, including one of the inmates who subsequently attacked him (Bons). In response, Burke "told the plaintiff to continue working and not to worry[,] that he would take care of it[,]" but "no action was tak[en] in this matter[.]" Compl. at 6. He also alleges that Gary Bons is well known by the staff for his use of weapons. Id. at 11. Second, he alleges that when he was attacked, staff responded within two minutes, but allowed the fight to continue for seven to nine minutes "[w]hile officers watched at the door giving verbal orders/commands only[.]" Id. Third, he alleges that, less than two months after Calderon was attacked by two inmates, prison staff exposed him to potential further attack by allowing one of his attackers to enter the visiting room while Calderon was there visiting with family. Id. at 9.

A Department of Correction incident report shows Calderon had numerous puncture wounds as a result of the July 2009 attack. Exhibits, Docket No. 1-1 at 4. Calderon alleges he still suffers from the injuries incurred during the attack ("He gets headaches, nightmares, and painful dis-comfort (sic) from stab wounds. He is constantly afraid for his life, and suffers from nerve damage and depression."). Compl. at 11.

He brings his claims under 42 U.S.C. § 1983, asserting that the Defendants' actions and inactions violated his rights under the Eighth and Fourteenth Amendments. Id. at 13. He also asserts a state law claim against the Defendants, claiming that Defendants' double-bunking policy violates Mass. Gen. Laws ch. 127, § 22. Id. at 4.

Along with the Complaint, Calderon filed two motions seeking to waive the filing fee: a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) and a Motion to Waive Filing

Fees and Court Costs (Docket No. 3).

## DISCUSSION

I.  The Motion for Leave to Proceed *In Forma Pauperis*; The Motion to Waive Filing Fees and Costs

Upon review of Calderon's financial affidavit and his prison transaction account summary, this Court finds that he has demonstrated sufficiently that he lacks funds to pay the $350.00 filing fee for this action. Accordingly, Calderon's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is ALLOWED; his Motion to Waive Filing Fees and Costs (Docket No. 3) is ALLOWED to the extent that he is permitted to proceed *in forma pauperis* in accordance with 28 U.S.C. § 1915(b); however, the motion is DENIED to the extent that Calderon seeks a complete waiver of the filing fees and costs in this action.

Since Calderon is a prisoner, he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b). In light of this, it is hereby Ordered that:

1. Plaintiff Calderon is assessed an initial partial filing fee of $42.30 pursuant to 28 U.S.C. § 1915(b)(1)(A);[1]

2. The remainder of the fee, $307.70, is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

---

[1] A comparison of the average monthly deposits and average monthly balance over a roughly six-month period (based on the prison account information submitted by Calderon) showed the average monthly deposits figure was larger. As such, this assessment was based on a manual calculation of 20% of the average monthly deposits over this period. This assessment is without prejudice to Calerson seeking reconsideration provided he submit an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b). Further, this assessment is made notwithstanding that Calderon may not have sufficient funds in his prison account to pay the initial partial filing fee; the *in forma pauperis* statute provides the court "shall assess, and, when funds exist, collect...." 28 U.S.C. § 1915(b)(1).

II.       Screening of the Complaint

Because Calderon is a prisoner, his Complaint is subject to the provisions of the Prison Litigation Reform Act. The Prison Litigation Reform Act of 1995 ("PLRA", Title VIII of Pub.L. 104-134, 110 Stat. 1321-1375 (1996), enacted several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis*);[2] 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).[3]

In reviewing this action, this Court liberally construes Calderon's Complaint because he is proceeding *pro se*. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000). Nevertheless, upon review of the Complaint, the Court finds his claims are subject to dismissal because they fail to state cognizable federal claims against the named defendants.

---

[2]Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

[3]Section 1915A authorizes courts to review prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if it lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

III.     Failure to State Plausible Federal Claim for Double-Bunking

Calderon alleges that the Defendants' institution of a double-bunking policy created a violent atmosphere in the prison, which led to his assault by inmates in the gym. This conclusory allegation, however, does not set forth a plausible claim upon which relief may be granted. The United States Court of Appeals for the First Circuit ("First Circuit") has stated that the policy of double-bunking is not a *per se* violation of due process. See Cote v. Murphy, 152 Fed. Appx. 6 (1st Cir. 2005) (unpublished decision citing Bell v. Wolfish, 441 U.S. 520, 541-43 (1979) and affirming the District Court's dismissal of a § 1983 claim on the ground that the policy of double-bunking sexually dangerous persons did not violate the Fourteenth Amendment). In Cote, the First Circuit noted that "in rare cases [the policy of double-bunking] might amount to an unlawful practice when combined with other adverse conditions." Id. See Rector v. Department of Corrections, 387 Fed. Appx. 5 (1st Cir. 2010) (upholding decision in Cote and affirming District Court's dismissal of civil committee's suit because he had not alleged that he had been harmed or was in danger of being harmed because of double-bunking). These cases indicate that, to constitute a constitutionally cognizable injury, the prisoner must have been harmed or in danger of being harmed by the inmate with whom he was double-bunked. Calderon has not alleged that he was double-bunked with either of his attackers. Indeed, it seems from his Complaint that both Bons and Parham were only part of his job assignment group. Accordingly, Calderon has failed to set forth sufficient facts to show that these claims present the rare case demonstrating a constitutionally cognizable injury.

In light of this, Calderon's civil rights claims relating to the policy of double-bunking are

subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.[4]

IV.     Failure to State Plausble Federal Claim for Improper Classification

Calderon's claims with respect to his classification and transfer to a high security prison are subject to dismissal because, as a general principle, there is no constitutional right which entitles an inmate to a particular institutional classification, nor is there a right to due process in the classification process. See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Montanye v. Haynes, 427 U.S. 236, 242 (1976). See also Palmigiano v. Mullen, 491 F.2d 978, 980 (1st Cir. 1974) (absent unusual circumstances, inmates do not have a constitutional right to any particular security classification). Similarly, as a general matter, prisoners do not have a constitutional right to placement in a particular institution. Meachum v. Fano, 427 U.S. 215 (1976) (due process clause does not limit inter-prison transfer even when new institution is much more disagreeable). Prisoners may be moved from institution to institution without any procedural formalities, such as hearings, so long as the transfer does not amount to an "atypical, significant deprivation." Sandin v. Conner, 515 U.S. 472, 486 (1995); *cf.* Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (the Constitution does not mandate comfortable prisons). Prison administrators are afforded broad deference in the adoption and execution of policies and practices necessary, in their judgment, to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979).

Calderon has not set forth any facts from which this Court could reasonably infer the

---

[4]Additionally, to the extent that Calderon asserts a state law claim for double-bunking against defendants, this Court would decline to exercise supplemental jurisdiction over that claim absent *bona fide* federal claims. See 28 U.S.C. § 1367(c).

existence of atypical circumstances that would implicate constitutional or due process concerns with respect to either his classification or placement. As such, to the extent that Calderon has not set forth facts to indicate his constitutional rights were violated by his alleged misclassification, he has no cause of action for injuries suffered following his misclassification.

Accordingly, Calderon's civil rights claims relating to his classification (or errors in his classification) are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

V.      Failure to State Plausible Federal Claim for Failure to Intervene

The failure to intervene claims against all three supervisory Defendants are subject to dismissal because Calderon has not set forth plausible claims against them. Calderon asserts that the Defendants failed to intervene to protect him from inmates Bons and Parham, but he only sets forth facts regarding Officer Burke's and unidentified staff members' actions or inactions. There are no allegations concerning any actions taken by Dickhaut, Vidal, or Mendonsa (other than their institution of a double-bunking policy, as discussed above), nor do any of the allegations provide any basis for direct liability. To the extent that Calderon has named Dickhaut, Vidal, and Mendonsa as Defendants because they are supervisory officials, this is insufficient to state a claim under 42 U.S.C. § 1983, as there is no *respondeat superior* liability for the actions or inactions of supervisors' employees or other staff under § 1983.[5]

---

[5] "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)). "[In civil rights actions],'supervisors are not automatically liable for the misconduct of those under their command. A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). See Pinto v. Nettleship, 737

7

Furthermore, apart from bald allegations of failure to intervene, Calderon has not set forth any factual basis for direct liability of any of the Defendants sufficient to state a plausible claim upon which relief may be granted. Section 1983 claims based on the failure to intervene turn on whether the defendants' actions were reckless or callously indifferent to plaintiff's civil rights. The United States Court of Appeals for the First Circuit has stated that "... a supervisor cannot be held liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) (citing Gutierrez-Rodríguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989) and Bordanaro v. McLeod, 871 F.2d 1151, 1163 (1st Cir. 1989), *cert. denied* 493 U.S. 820 (1989)). See also Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994) (same). This standard is also referred to as a "deliberate indifference" standard. Febus-Rodriguez, 14 F.3d at 92. See Duran v. Duval, 1998 WL 765726, *2-3 (D. Mass. 1998) (O'Toole, J.) (finding no liability of deputy superintendents for failing to prevent an attack if they had no knowledge of a possible constitutional infringement); *cf.* Niemic v. Maloney, 409 F. Supp. 2d 32, 35-36 (D. Mass. 2005) (Gorton, J.) (finding *pro se* plaintiff stated cognizable claim for direct liability by alleging that he directly informed [then Commissioner] Maloney of his unconstitutional treatment with respect to medical care, which the Commissioner failed to address).

The test for what constitutes reckless or callous indifference is whether it would be

---

F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials).

apparent to a reasonable supervisor that his conduct was "very likely to violate an individual's constitutional rights." Reid v. Brodeur, 2001 WL 274843, at *4 (D.N.H 2001) quoting Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989). See Pineda, 533 F.3d at 54. "In addition, there must be an 'affirmative link' between a subordinate's misconduct and the supervisory official's action or inaction." Reid, 2001 WL 274843, at *4 citing Febus-Rodriguez, 14 F.3d at 92. "Other factors that assist in determining liability are: (1) whether the supervisor had knowledge of the alleged violations; and (2) whether the supervisor's actions or inactions could be viewed as "supervisory encouragement, condonation, or acquiescence." Reid, 2001 WL 274843, at *4 quoting Lipsett v. Blanco, 864 F.2d 881, 902 (1st Cir. 1988).[6] Absent any factual basis from which a claim of deliberate indifference could be reasonably inferred, Calderon's claims against the named supervisory Defendants based on the failure to intervene are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A.

VI.     Order to Show Cause and Amend the Complaint

In light of the above, this action shall be dismissed within 42 days of the date of this Memorandum and Order unless Calderon demonstrates good cause in writing why it should not be dismissed. Any show cause response shall not exceed five (5) double-spaced pages and shall address the legal impediments noted above. Additionally, Calderon shall file an Amended Complaint curing the pleading deficiencies with respect to each of the named Defendants, and/or adding or substituting the proper Defendants (*i.e.*, those individuals directly involved in the

---

[6]The failure to intervene claims are often raised in the context of failure to protect an inmate against physical harm (beatings by prison guards or inmates, or failure to provide adequate medical care).

9

alleged incidents). Failure to comply with these directives will result in a dismissal of this action.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion to Waive Filing Fees and Costs (Docket No. 3) is <u>ALLOWED</u> to the extent that he is permitted to proceed *in forma pauperis* in accordance with 28 U.S.C. § 1915(b); however, the motion is <u>DENIED</u> to the extent that Plaintiff seeks a complete waiver of the filing fees and costs in this action; and

3. Within 42 days from the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why this action should not be dismissed, addressing the legal impediments to his claim(s). Plaintiff also shall file an Amended Complaint curing the pleading deficiencies with respect to each of the named Defendants and/or adding or substituting the proper Defendants.

SO ORDERED.

/s/ Joseph L. Tauro
JOSEPH L. TAURO
UNITED STATES DISTRICT JUDGE

DATED: July 6, 2011